UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL CRAFT #143507,

    Plaintiff,                                         Hon. Janet T. Neff

v.                                                     Case No. 1:18-cv-899

MARGARET OUELLETTE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 13). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). In April 2017, Plaintiff met with Physician's Assistant Margaret Ouellette. When Plaintiff "inquired about his hat and long sleeve shirt detail," Ouellette indicated that "there was nothing in his medical file indicating a need for a hat and long sleeved shirt." Plaintiff responded that "he has a documented history of sun poisonings" and "has had medical details for brimmed hats and long sleeve shirts at every facility he has been in for the past twenty years."

In mid-June 2017, a "lesion/tumor began developing in the temple area of [Plaintiff's] face." On July 6, 2017, Plaintiff was examined by a nurse who measured the lesion at 3 mm. On

-1-

July 20, 2017, Plaintiff was examined by Defendant Ouellette by which time Plaintiff's lesion had doubled in size. On August 15, 2017, Ouellette performed a biopsy of the lesion. On August 25, 2017, Ouellette informed Plaintiff that the lesion was cancerous and that she would, therefore, schedule Plaintiff for surgery so that the lesion could be removed.

On October 18, 2017, Plaintiff underwent surgery to remove the lesion in question. The surgeon also informed Plaintiff that "he was concerned about two other spots in proximity with the removed tissue." The surgeon scheduled Plaintiff for a follow-up visit to take place "in a few months." Defendant Ouellette cancelled this appointment, however, informing Plaintiff that "she would monitor the situation." Ouellette further informed Plaintiff "to contact Healthcare if the areas of concern began to manifest tumors."

Plaintiff initiated this action against Margaret Ouellette and Corizon, Inc. alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Plaintiff alleges his rights were violated in several ways: (1) Defendant Ouellette refused his request for a hat and long sleeve shirt accommodation in April 2017; (2) Defendant Ouellette delayed in performing a biopsy of his lesion and submitting such for analysis; (3) Defendant Ouellette delayed in submitting a request for surgical removal of Plaintiff's lesion; (4) Corizon delayed in approving surgery to remove Plaintiff's lesion; and (5) Defendant Ouellette "deprived[d] [Plaintiff] of treatment prescribed by the surgeon" who removed his facial lesion. Plaintiff seeks four million dollars in damages as well as injunctive relief. Defendants Ouellette and Corizon now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation,

'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Defendant Corizon**

Corizon is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy or custom. *See Burgess v. Fischer*, 735

F.3d 462, 478 (6th Cir. 2013). Plaintiff can demonstrate the existence of such a policy or custom in one of several ways: (1) prove the existence of an illegal official policy; (2) establish that an official with final decision making authority ratified illegal actions; (3) demonstrate that there existed a policy of inadequate training or supervision; or (4) establish that there existed a custom of tolerance or acquiescence of federal rights violations. *Ibid.* Plaintiff has failed to present evidence that would satisfy any of these requirements. Accordingly, the undersigned recommends that Corizon is entitled to summary judgment.

**II.      Defendant Ouellette**

As noted above, Plaintiff alleges that Defendant Ouellette violated his Eighth Amendment rights by: (1) refusing his request for a hat and shirt accommodation; (2) delaying a biopsy of his lesion; (3) delaying in seeking approval to have the lesion removed, and (4) depriving him of treatment prescribed by another medical professional.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of her motion for summary judgment, Defendant Ouellette has submitted an affidavit as well as copies of the relevant portions of Plaintiff's medical records. (ECF No. 13-3 at PageID.70-75; ECF No. 15-1 at PageID.114-90). This evidence reveals the following.

Plaintiff was examined by Defendant Ouellette on July 21, 2017. (ECF No. 15-1 at PageID.115-16). Ouellette observed the presence of a skin lesion on Plaintiff's face, specifically reporting:

> Examination of integument of right upper face demonstrates a domeshaped, fleshcolored nodular lesion with irregular borders. Flesh colored lesion measures approximately 1.8 by 1.7 cm. A tan colored nodular lesion sits on top of the flesh colored lesion. Tan lesion measures approximately 1.1 by 1.1 cm. No ulceration.

(ECF No. 15-1 at PageID.115-16).

Ouellette indicated that Plaintiff's lesion might constitute squamous cell carcinoma and, therefore, she scheduled requested that photos be taken of the lesion and also scheduled Plaintiff for a biopsy of the lesion. (ECF No. 15-1 at PageID.116). A biopsy of Plaintiff's lesion was performed on August 15, 2017, and sent for analysis. (ECF No. 15-1 at PageID.118-21). On August 22, 2017, Plaintiff was informed that the biopsy revealed "invasive cell carcinoma." (ECF No. 15-1 at PageID.122).

On August 25, 2017, Defendant Ouellette informed Plaintiff that "the Pathologist recommends re-excision [of the lesion site] to clear margins." (ECF No. 15-1 at PageID.127). Ouellette informed Plaintiff that she would recommend that the re-excision be performed by a general surgeon. (ECF No. 15-1 at PageID.127). Ouellette also provided Plaintiff with an accommodation to wear long sleeve shirts. (ECF No. 15-1 at PageID.129). Plaintiff was subsequently granted approval to wear a "wide brimmed hat." (ECF No. 15-1 at PageID.143-46).

On September 11, 2017, Defendant Ouellette informed Plaintiff that "he was approved for surgery consult for skin cancer." (ECF No. 15-1 at PageID.141). The following day, however, "utilization management" instructed Ouellette to send Plaintiff to dermatology for purposes of the re-excision. (ECF No. 13-3 at PageID.72; (ECF No. 15-1 at PageID.144-51). Accordingly, Ouellette requested that Plaintiff be approved for a dermatology consultation for purposes of performing the recommended re-excision. (ECF No. 13-3 at PageID.72; ECF No. 15-1 at PageID.144-51).

On October 16, 2017, Plaintiff met with Defendant Ouellette who informed him that the dermatology consultation had been approved and "we are waiting for an appointment." (ECF No. 13-3 at PageID.72; ECF No. 15-1 at PageID.152). Plaintiff was examined by someone in dermatology on October 18, 2017, who recommended that Plaintiff undergo a Mohs procedure[1] to treat his lesion. (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.158). The following day, Plaintiff met with Defendant Ouellette who submitted a request that Plaintiff undergo the recommended procedure. (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.158).

This request was approved and Plaintiff underwent the Mohs procedure on November 8, 2017. (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.161-64, 169-75). On November 9, 2017, Plaintiff met with Defendant Ouellette who reminded Plaintiff to keep the "surgical site clean and dry" and continue taking his prescribed medications. (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.178-80). On December 2, 2017, Plaintiff met with an offsite care provider regarding his lesion. (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.181-82). This examination revealed

---

[1] Mohs surgery "is a precise surgical technique" during which "thin layers of cancer-containing skin are progressively removed and examined until only cancer-free tissue remains." Mohs Surgery, available at https://www.mayoclinic.org/tests-procedures/mohs-surgery/about/pac-20385222 (last visited on Jan. 10, 2019). Mohs surgery "is an improvement to standard surgery (local excision)" because it "allows surgeons to verify that all cancer cells have been removed at the time of surgery" and "reduces the need for additional treatments or additional surgery." *Id.*

that Plaintiff was "doing well after Moh's procedure." (ECF No. 13-3 at PageID.73; ECF No. 15-1 at PageID.181-82).

On February 22, 2018, Plaintiff met with Defendant Ouellette. (ECF No. 13-3 at PageID.74; ECF No. 15-1 at PageID.183-84). An examination of Plaintiff's surgical site revealed "no signs of recurrence." (ECF No. 13-3 at PageID.74; ECF No. 15-1 at PageID.183-84). Plaintiff was instructed to "notify healthcare immediately if lesion returns." (ECF No. 13-3 at PageID.74; ECF No. 15-1 at PageID.184). On September 19, 2018, Defendant Ouellette requested that Plaintiff undergo a liver ultrasound "for hepatoma surveillance." (ECF No. 13-3 at PageID.74; ECF No. 15-1 at PageID.185-90). Plaintiff has not presented any evidence in response to Defendant's motion for summary judgment.

This evidence makes clear that Defendant Ouellette (and others) did, in fact, provide significant and timely medical care to Plaintiff. While Plaintiff may disagree with Defendant's treatment decisions or the manner in which she exercised her professional judgment, as noted above, allegations of negligent treatment, misdiagnosis, or medical malpractice do not implicate the Eighth Amendment. Furthermore, to the extent Plaintiff claims that a delay in treatment violated his rights, he must present medical evidence establishing that he suffered a detrimental effect as a result of the alleged delay in treatment. *See, e.g., Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) ("an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed"). Plaintiff has presented no such evidence. Accordingly, the undersigned recommends that Defendant Ouellette is entitled to summary judgment.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 13), be **granted** and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 22, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge